UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CINDY BURGER,                          :
                                       :CIVIL ACTION NO. 3:10-CV-1638
          Plaintiff,                   :
                                       :(JUDGE CONABOY)
          v.                           :
                                       :
SHOWTIME MOTOR SPORTS, INC.,           :
and ROBIN RICHARDSON,                  :
                                       :
          Defendants and               :
          Third-Party Plaintiffs,      :
                                       :
          v.                           :
                                       :
BREWER TIRE AND AUTOMOTIVE, MUDDY      :
CREEK MOTOR SPORTS, HOLIDAY            :
KAMPER CO., d.b.a. CAMPING WORLD,      :
SHIPP'S RV CENTER,                     :
d.b.a. CAMPING WORLD RV SALES,         :
                                       :
          Third-Party Defendants.      :
                                       :

---

## MEMORANDUM

Here we consider the Motion for Summary Judgment of Additional Defendant Muddy Creek Motor Sports (Doc. 55).  This motion seeks dismissal of all claims against Third-Party Defendant Muddy Creek Motor Sports ("Muddy Creek") by Third-Party Plaintiffs (original Defendants) Showtime Motor Sports, Inc., and Robin Richardson ("Third-Party Plaintiffs" or "Defendants").  (*Id.*)  For the reasons discussed below, we grant the motion.

## II. Background

Plaintiff Cindy Burger filed this diversity action on August 6, 2010, alleging she was injured in an accident on September 22,

2009, on Interstate 81 Southbound in Lackawanna County, Pennsylvania.  (Doc. 1  ¶¶ 6, 12.)   Defendants Showtime Motor Sports and Robin Richardson owned and operated a 2007 Chevrolet Silverado with a full trailer (Navy Sim II trailer) in tow.  (Doc. 1 ¶ 6.)  Richardson was an employee of Showtime authorized to operate the vehicle.  (Doc. 1 ¶ 5.)  Plaintiff was in a construction zone along I-81 when a tire and wheel from Defendants' trailer detached from the trailer, continued to travel off the roadway into the construction zone and struck Plaintiff.  (Doc. 1 ¶ 5.)  The impact caused Plaintiff to lose consciousness and resulted in Plaintiff sustaining "severe and permanent injuries."  (Doc. 1 ¶ 6.)  Plaintiff also alleges that the dangerous condition of the trailer and its parts was known for some time prior to the time of Plaintiff's injuries and Defendants had actual or constructive knowledge of same.  (Doc. 1 ¶ 8.)

Defendants filed a two-count Third-Party Complaint against Brewer Tire and Automotive ("Brewer"), Muddy Creek Motor Sports ("Muddy Creek"), and Shipp's RV Center, LLC d/b/a Camping World RV Sales and Holiday Kamper Company of Columbia, LLC d/b/a/ Camping World RV Sales ("Camping World") on August 17, 2010.[1]  (Doc. 4.)  Third-Party Plaintiffs make the following general allegations:

---

[1]  The caption has been amended to reflect that, rather than Camping World, the correct Defendants are Shipps RV Center, LLC d/b/a Camping World RV Sales and Holiday Kamper Company of Columbia, LLC d/b/a Camping World RV Sales.  (Docs. 30, 31.)

Brewer supplied maintenance and service to the 1990 Proco trailer attached to Defendants' 2007 Chevrolet Silverado (Doc. 4 ¶ 4); Muddy Creek maintained and serviced the 1990 Proco trailer (*id.* ¶ 5); and Camping World maintained and serviced the 1990 Proco trailer.  Count I of the Third-Party Complaint alleges, *inter alia*, that Brewer was negligent for failing to properly service the trailer, for failing to properly inspect the trailer, for failing to repair the dangerous, defective, and/or deteriorated condition of the trailer, and for allowing the trailer to remain in that condition for an extended period of time.[2]  (Doc. 4 ¶ 8.)  Count II for Common Law Indemnity/Contribution alleges that if Plaintiff was injured as alleged, the injuries were caused solely and primarily by the conduct of all Third-Party Defendants such that Third-Party Defendants would be solely, jointly or severally liable.  (Doc. 4 ¶ 10.)  Third-Party Defendants add that a "Common Law and/or contractual claim is hereby made against Third-Party Defendants Brewer Tire and Automotive, Muddy Creek Motor Sports and Camping World."  (*Id.*)  Defendants seek indemnity on all claims arising from the litigation as well as costs and expenses associated with the litigation.  (Doc. 4.)

All Third-Party Defendants filed cross-claims against Defendants Showtime and Richardson and other Third-Party Defendants

---

[2]  Count I does not make any specific allegations of negligence against Third-Party Defendants Muddy Creek and Camping World.

3

seeking indemnification and/or contribution.  (Doc. 10 at 7-8; Doc. 25 at 6-7; Doc. 28 at 5-6.)

The facts relevant to this motion are set out in Local Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment of Additional Defendant Muddy Creek Motor Sports (Doc. 71) and Defendants, Showtime Motor Sports, Inc. and Robin Richardson's Local Rule 56.1 Statement of Material Facts in Support of Response to Defendant, Muddy Creek Motor Sports' Motion for Summary Judgment Seeking Dismissal of Third-Party Complaint (Doc. 74).

The parties agree that the subject incident occurred when a tire detached from a trailer while driving through a construction site.  (Doc. 71 ¶ 2; Doc. 74 ¶ 2.)  They further agree that Third-Party Plaintiffs incorporated by reference and asserted the negligence claims of Plaintiff against the Third-Party Defendants. (Doc. 71 ¶ 4; Doc. 74 ¶ 4.)

Third-Party Plaintiffs produced a liability expert report authored by George H. Meinschein outlining Showtime's position on the liability aspects of the case.  (Doc. 71 ¶ 5; Doc. 74 ¶ 5.) Third-Party Plaintiffs' expert reached the following conclusions:

> 1.  The September 22, 2009 separation of the left-side tire, wheel, brake assembly and spindle from the subject Proco trailer was caused by the sudden and catastrophic failure of the weld that joined the spindle to the axle tube.
>
> 2.  The underlying cause of the sudden and catastrophic failure of the welded joint between the subject spindle and the axle

4

> > tube was a latent manufacturing defect
> > that presented no evidence of inadequate
> > strength until it failed.
>
> > 3    The defective weld that failed on
> >      September 22, 2009 would not have
> >      presented any evidence of impending
> >      failure during a pre-trip inspection.
>
> > 4.   The welded joint between a spindle and
> >      an axle tube is not subject to routine
> >      maintenance or inspections.

(Doc. 71 at 31-32.)   Third-Party Plaintiffs add that "Plaintiff's expert report from Robeson Forensic claims that Additional Defendant, Muddy Creek Motor Sports was negligent in the inspection of or failure to inspect a truck axle that was involved in a motor vehicle accident in relation to this civil action."   (Doc. 74 ¶ 5.)

Muddy Creek asserts that it performed limited maintenance on the subject trailer before the September 21, 2009, incident.   (Doc. 71 ¶ 6.)   Denying the level of maintenance performed on the subject trailer, Third-Party Plaintiffs assert that they had a contractual relationship with Muddy Creek "to perform maintenance on the subject trailer on occasion and did in fact perform maintenance on the subject trailer."   (Doc. 74 ¶ 6.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(*citing* Fed. R. Civ. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (*citing Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex*, 477 U.S. at 325.  The non-moving party may not rest on the bare

6

allegations contained in his or her pleadings, but is required by
Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by
way of affidavits, depositions, answers to interrogatories or the
like in order to demonstrate specific material facts which give
rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317,
324 (1986). When Rule 56(e) shifts the burden of proof to the non-
moving party, that party must produce evidence to show the
existence of every element essential to its case which it bears the
burden of proving at trial. *Equimark Commercial Finance Co. v.
C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

"In considering a motion for summary judgment, a district
court may not make credibility determinations or engage in any
weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when
evidentiary facts are in dispute, when the credibility of witnesses
may be in issue, or when conflicting evidence must be weighed, a
full trial is usually necessary.

**B. *Muddy Creek Motion***

Third-Party Defendant Muddy Creek argues that summary judgment
is proper because Third-Party Plaintiffs' expert report forecloses
any claim against Muddy Creek. (Doc. 56 at 3-4.) Procedurally,
Muddy Creek argues its motion should be granted because Third-Party
Plaintiffs did not timely respond to the motion. (Doc. 67 at 3.)
For the reasons discussed below, we conclude summary judgment in
favor of Camping World against Third-Party Defendants is

7

appropriate.

Muddy Creek is correct that Third-Party Plaintiffs did not file a timely response to this summary judgment motion.  In their late-filed opposition brief, Third-Party Plaintiffs assert they did not realize they had to respond because the motion under consideration here is the same as a previously filed summary judgment motion.  (Doc. 68 at 9-10.)  While we find Third-Party Plaintiffs' rationale for their failure to timely file an opposition brief unconvincing and conclude that they misconstrue earlier rulings of this Court, we will not decide the pending motion on procedural grounds.[3]

Muddy Creek asserts that Third-Party Plaintiffs' expert's conclusions show that Muddy Creek cannot be liable.  (Doc. 56 at 4.)  First, Muddy Creek points to the expert's conclusion that the accident was caused by the sudden and catastrophic failure of the weld, concluding the occurrence would have been a complete surprise

---

[3]  Third-Party Plaintiffs assert the instant motion is the same as that filed on October 11, 2011 (Doc. 46), and they did not realize they had to file a brief in response to this motion.  (Doc. 68 at 9-10.)  The motions are clearly distinct, as are the arguments raised in the supporting briefs.  (*See* Docs. 46, 47, 55, 56.)  The first motion sought summary judgment in Muddy Creek's favor against Plaintiff (Doc. 46 at 2); the motion under consideration here seeks summary judgment against Third-Party Plaintiffs (Doc. 55 at 2).  Further, the Court's order of November 21, 2011, *did not* rule on the issue of whether summary judgment against Third-Party Plaintiffs should be entered because that question was not before the Court.  (Doc. 66.)  Thus, the Court commented that Third-Party Defendant Muddy Creek remained a proper Third-Party Defendant *at that stage* of the litigation.  (*Id.* at 4.)

to Muddy Creek or any other party.  (Doc. 56 at 4-5.)  Regarding
the conclusion that the underlying cause of the sudden and
catastrophic failure of the welded joint was a latent manufacturing
defect, Muddy Creek points to the fact that it is undisputed that
Muddy Creek did not manufacture any component of the wheel/tire
assembly or any other part of the trailer.  (*Id.* at 5.)  Muddy
Creek also looks to the conclusion that the defective weld would
not have presented any evidence of impending failure during a pre-
trip inspection as support for the proposition that any defects
were not visible to the naked eye either during the Showtime
driver's pre-trip inspection or for any other professional or
observer of the weld joint.  (*Id.*)

     Finally, Muddy Creek focuses on the expert's conclusion that
the welded joint between a spindle and an axle tube is not subject
to routine maintenance or inspections.  (*Id.*)  Asserting that it
provided very little maintenance to the trailer involved in this
incident, Muddy Creek states it "has confirmed that, at no time,
did it ever perform any maintenance repair work that would have
remotely effected [sic] the way in which any wheel/tire/axle was
attached to the trailer or its suspension."  (*Id.*)  Muddy Creek
notes that the "only tangentially relevant item" in the record
invoices is that it performed work on the wheel bearings on the
opposite side of the trailer from where the axle dislodged and this
repair has nothing to do with the way the axles are systematically

attached to the trailer/suspension.  (*Id.* at 6.)  Muddy Creek adds that it replaced tires on the trailer on one occasion but the specific tires replaced are unknown.  (*Id.*)  Muddy Creek also notes that it last performed work on the trailer on September 9, 2009, and after this the Showtime driver would have performed daily inspections on trips to North Carolina, Binghamton, New York, and the trip to North Carolina which is when this incident took place. (*Id.*)

Asserting that the facts show "it is abundantly clear that Muddy Creek's sole role in this case was to have performed limited maintenance on the subject trailer," Muddy Creek concludes it is exonerated by the expert's finding that "the welded joint between a spindle and an axle tube is not subject to routine maintenance and inspections."  (*Id.*)  Muddy Creek adds these facts show that unless Showtime requested specific work on the welded joint in question (and it is undisputed that no such work order was ever placed), Muddy Creek had no duty to perform such inspection.  (*Id.* 6-7.)

Third-Party Plaintiffs argue that Muddy Creek provided a service for Defendant and is liable pursuant to Section 323 of the Restatement (Second) of Torts.  (Doc. 68 at 11.)  Section 323 addresses the "Negligent Performance of Undertaking to Render Services."

> One who undertakes, gratuitously or for
> consideration, to render services to another
> which he should recognize as necessary for
> the protection of the other's person or

> things, is subject to liability to the other
> for physical harm resulting from his failure
> to exercise reasonable care to perform his
> undertaking, if
>
>> (a) his failure to exercise such care
>> increases the risk of such harm, or
>
>> (b) the harm is suffered because of the
>> other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.

Third-Party Plaintiffs do not dispute that expert testimony is necessary to establish liability in this case. Rather, they point to Plaintiff's expert report, contending "the expert report implicates Additional Defendant Muddy Creek as being negligent in their actions in relation to the vehicle involved in the instant matter." (Doc. 68 at 12.) On this basis, Third-Party Plaintiffs conclude that Muddy Creek should not be exempt from liability. (*Id.*) Third-Party Plaintiffs do not cite to any factual support for Plaintiff's expert's legal conclusion, nor do they provide the report.

If the Court considers Plaintiff's expert's conclusion "cited material[]" which should be included in consideration of a summary judgment motion, Fed. R. Civ. P. 56(c)(3), we must determine what, if any, effect the opinion has on the present motion. To be valid, an expert's opinion must be "based on sufficient facts or data." Fed. R. Evid. 702. Moreover, an expert may not testify as to the governing law of the case. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). "Although Federal Rule of

Evidence 704 permits an expert witness to give expert testimony that 'embraces an ultimate issue to be decided by the trier of fact,' an expert witness is prohibited from rendering a legal opinion." *Id.* (quoting Fed. R. Evid. 704); *see also Blain v. Twp. of Radnor*, 167 F. App'x 330, 338 (3d Cir. 2006) (not precedential) (expert's legal opinion does not create genuine issue of material fact and was properly not credited by district court in considering summary judgment); *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) ("[M]ere allegations are not sufficient to raise a genuine issue of material fact for purposes of defeanting summary judgment.")

Here, the only support offered by Third-Party Plaintiffs for their opposition to summary judgment is Plaintiff's expert's legal opinion that Muddy Creek was negligent--an opinion unsupported by facts or data. (*See* Doc. 68 at 12.)  Given the relevant legal principles, we conclude Plaintiff's expert's opinion that Third-Party Defendant Muddy Creek was negligent is insufficient to defeat this summary judgment motion.

### III. Conclusion

For the reasons discussed above, the Motion for Summary Judgment of Additional Defendant Muddy Creek Motor Sports (Doc. 55) is granted.  An appropriate Order will be entered.


                                   S/Richard P. Conaboy
                                   RICHARD P. CONABOY
                                   United States District Judge

DATED: _____